## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MAYGIN A. GILLARD,                    )
                                      )
      Plaintiff,                   )
                                      )
v.                                    )    **Case No. CIV-20-1030-SM**
                                      )
KILOLO KIJAKAZI,                      )
ACTING COMMISSIONER                   )
OF SOCIAL SECURITY,                   )
                                      )
      Defendant.                   )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Maygin A. Gillard brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 17, 18.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge's (ALJ) residual functional capacity[2] (RFC) assessment is unsupported

---

[1]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

[2]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

by substantial evidence and the ALJ failed to properly assess Plaintiff's credibility. Doc. 20, at 3, 15. After careful review of the record, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 17-18; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)     had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date;

(2)     has the following severe impairments: obesity (BMI greater than 40), inflammatory arthritis, fibromyalgia, depressive disorder, anxiety disorder, and peripheral neuropathy;

(3)     has no impairment or combination of impairments that meet or medically equal the severity of a listed impairment;

(4)     had the RFC to perform medium work, but is limited to a work environment where contact with coworkers and the general public is incidental to work performed, and with the following exceptions: that she can understand, remember, and carry out simple and some detailed but not complex tasks, that she can relate to supervisors on a superficial work basis, and that she can adapt to a work situation;

(5)     is unable to perform any past relevant work;

(6)     can perform jobs that exist in significant numbers in the national economy, such as dishwasher, lab equipment cleaner, and warehouse worker; and so,

(7)     was not under a disability from October 1, 2013, through
        April 2, 2020.

*See* AR 18-27.

### 2.    Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.    Judicial review of the Commissioner's decision.

### A.    Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the

4

evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

**B.    Issues for judicial review.**

Plaintiff claims: (1) substantial evidence does not support the ALJ's RFC assessment and step-five conclusions because the ALJ disregarded Plaintiff's problems with manual manipulation, walking, or standing, or her obesity, pain, or mental-health symptoms;[3] and (2) the ALJ failed to properly assess Plaintiff's credibility/consistency.

---

[3]    Specifically, Plaintiff claims: "The ALJ failed to follow the required legal standards so his hypothetical question to the [vocational expert], the RFC, and his Step Five findings are not supported by the required substantial evidence. The ALJ first failed to properly account for Ms. Gillard's limitations, both exertional and non-exertional, in the hypothetical questions and decisional RFC. The ALJ further failed to properly analyze the medical opinions of the record. Finally, these issues are compounded by Ms. Gillard's mental health issues that were not fully explored. The record establishes Ms. Gillard suffers from depression and anxiety, yet no mental health limitations were properly established, and thus the ALJ should have developed the record." Doc. 20, at 3-4.

The Court will address Plaintiff's claims about her manual manipulative limitations, standing and walking limitations, obesity-related limitations, pain-related limitations, and mental health limitations in turn, *infra* § IV.A.1-5. Plaintiff's argument about the ALJ's questions to the vocational expert pertains to her manual manipulative limitations, so the Court will address that argument in the appropriate subsection, *infra* § IV.A.1.

### III.   How the ALJ arrived at the RFC assessment.

The ALJ arrived at the RFC assessment after considering Plaintiff's hearing testimony, her treatment history, the objective medical evidence, and the medical source opinion. *See* AR 21-25.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 25.

The ALJ reached that conclusion by first discussing Plaintiff's activities of daily living, as reported on her function report in February 2019. *Id.* at 22. Plaintiff lives in a house with friends. *Id.* During the day she takes medication and lies in bed waiting for it to "kick in," then she "gets dressed, sits for a while, . . . tries to stay off feet as much as possible, [and] lies in bed off and on all day." *Id.* She "cannot stand for long periods of time [and] is in constant pain." *Id.* "[A]ny form of exertion makes her physically sick." *Id.*

She "needs [no] special reminders to take [care of] personal needs [and] grooming, or reminders to take medicine." *Id.* She also "goes to doctors and counseling on a regular basis" and "does not need to be reminded to go places." *Id.* She "spends time with family and talks on the phone daily." *Id.* She "prepares her own meals daily," "does laundry with breaks," and "goes outside

6

2 to 3 times a week," going out alone and driving herself. *Id.* She shops for food, but not alone. *Id.* She "is able to pay bills, count change, handle savings account and use checkbook/money orders." *Id.* Her hobbies include "coloring and watching TV," which she does well and does daily. *Id.* On an "average day, she takes medications, gets dressed, watches TV, plays some cards, folds laundry and does very little housework," though she "can wash a few dishes." *Id.* at 23.

As for her physical and mental capabilities, "she can lift less than a gallon of milk" and "can squat but cannot get up." *Id.* at 22. It is "very painful to bend," "standing is painful in her back and legs," and "reaching hurts her back and arms." *Id.* She "cannot walk far before her legs and back start to hurt," and she can walk "50 to 100 feet before needing to rest 4 to 5 minutes." *Id.* She "can walk 1/4 of a block, sit about 30 minutes, [and] sit/stand for 2 to 3 hours." *Id.* at 23. She "has to shift when sitting" and "cannot kneel as [her] knees are very weak." *Id.* at 22. Climbing stairs is also painful. *Id.* She "does not use any assistive devices for ambulating." *Id.* at 23.

Her eyes are dry, which "causes [her] eyes to blur." *Id.* at 22. She "only has hearing on the left side due to [a] birth defect." *Id.* at 23. Her "hands hurt a lot and [at] times she cannot grip." *Id.* at 22.

She "has very short-term memory, has difficulty completing tasks, and is easily distracted with concentration." *Id.* She "follows written directions okay but may have to look back a few times" and "follows spoken instructions

7

okay if not lengthy." *Id.* She "gets along fine with authority figures" but "does not handle stress well and has anxiety attacks." *Id.* at 22-23. She handles changes in routine "so so." *Id.* at 23.

The ALJ then evaluated her symptoms and injuries. Plaintiff worked "taking care of developmentally disabled adults." *Id.* She "aggravated her back because a client threw a fit and had to be restrained in a wheelchair," and she left that job "because of increased problems with her back." *Id.* She "has problems with her neck, shoulders and hands," which burn, tingle, and lose feeling. *Id.* She has "bursitis of [the] right hip and cannot lie or sit on it." *Id.* Her back hurts "all the time." *Id.*

She has "migraines 2 to 3 times a week," which she "tries to medicate and if that does not work, she goes to a dark room 2 to 3 times a week." *Id.* She has a positive ANA test, and her "autoimmune problems cause her to get sick in public." *Id.* She "has depression and if not on medication, she cries uncontrollabl[y]." *Id.* She "stays home and isolates" and "has anxiety when being close to too many people, trains and elevators." *Id.*

Finally, the ALJ evaluated Plaintiff's treatment history. She saw Dr. Omar Silvestre from April 18, 2017, for pain in her right hand, beginning about six weeks prior and eventually spreading to her left hand. *Id.* at 23, 588. She reported that Tylenol #4 helped. *Id.* She had been diagnosed with fibromyalgia seven years before. *Id.* Her physical exam showed no apparent distress and a

normal gait, but also that she was obese, with a BMI of 40.2. *Id.* at 23, 591. She had good muscle strength and no muscle tenderness. *Id.* Her mental status was "normal, alert, oriented times 3," with "cranial nerves grossly intact." *Id.* She was then seen for several follow-up visits:

> On January 4, 2018, she was seen for 3-month reevaluation of inflammatory arthritis. She reported more difficulties with pain on her right side. Her pain is more severe later in the day after being up and active. She had been dropping objects with right hand. Exam showed no apparent distress, weight 246 pounds, BMI 42.23. On May 7, 2018, she was seen for 4-month follow-up. . . . Exam showed she was pleasant and in no apparent distress. . . . Cranial nerves grossly intact. Range of motions of joints was normal. On June 25, 2018, claimant stated her pain was the same but different. She was recently started on Tylenol #4 and this helps. Morning stiffness lasts about one hour. . . . Assessment: undifferentiated connective tissue disease; ongoing use of possibly toxic medication; and fibromyalgia. On November 1, 2018, claimant complained that she is doing worse. She was seen by orthopedist and X-ray of right hip showed bursitis. She feels severely stiff in the morning for several hours. Diagnoses: polyarthralgia, paresthesias, positive ANA, fibromyalgia and Sicca, unspecified type.

*Id.* at 23-24.

Plaintiff was seen on May 8, 2018, at Family Care Services of Enid. She was assessed with "inflammatory arthritis, . . . mild intermittent asthma without complication[,] GERD without esophagitis, . . . depression, unspecified type and other migraine without status migrainosus—not intractable." *Id.* at 24, 759-60. She had several follow-up visits during which she was assessed with "low back pain, unspecified back pain laterally, unspecified chronicity

without sciatic present," "[d]ysarthria and [w]eakness of [r]ight [h]and," and "autoimmune distress." *Id.* at 24.

Plaintiff was seen at Enid Community Clinic on December 17, 2019, complaining of fever, cough, and sore throat, and it was noted that "[h]er depression was well controlled on Effexor. . . ." *Id.* at 24, 1072.

Plaintiff sought treatment for her workplace injury beginning in December 2019. On December 9, 2019, Plaintiff injured her back while "doing a wheelchair hold for 1 hour and 30 minutes." *Id.* at 24, 1187. She was seen at Integris Bass Occupational Medicine on December 12, 2019, with a chief complaint of problems with her "back." *Id.* at 24, 1184. She was diagnosed with "sprain of ligaments of lumbar spine" and instructed to begin an exercise and stretching program and take Naproxen for the pain. *Id.* at 24, 1184-87. She was seen on January 9, 2020, for a third follow-up visit. *Id.* at 24, 1172 (noting "[t]his is the 4th time I have evaluated Maygin for this problem"). She had attended three physical therapy visits and "stated she [was] improving slightly." *Id.* She was to "continue Ibuprofen and Skelaxin." *Id.* Her recommended work status was "Restricted Duty": "[l]ifting should be limited to 15 pounds or less; twisting may not be performed and bending may not be performed." *Id.* at 24-25, 1170. That restricted work status was set to expire January 23, 2020. *Id.*

The ALJ found the state agency medical consultants' and psychological consultants' opinions to be "persuasive and supported by the medical evidence." *Id.* at 25. Those opinions limited Plaintiff to medium work, with certain nonexertional restrictions. AR 117, 126, 130, 133-36.

## IV.   Analysis of the Administrative Law Judge's decision.

### A.   The ALJ's RFC assessment is supported by substantial evidence.

Plaintiff claims, broadly, that the ALJ's RFC assessment overlooked Plaintiff's problems with manual manipulation, walking, or standing, or her obesity, pain, or mental-health symptoms. Relatedly, Plaintiff argues the ALJ also erred in his step-five finding that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as dishwasher, lab equipment cleaner, and warehouse worker. *See Wall*, 561 F.3d at 1052 ("[T]he agency considers, at step five, whether [the plaintiff] possesses the sufficient residual functional capability to perform other work in the national economy.").

As a general matter, the "mere presence" of a condition does not prove functional limitations amount to disability. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995). Instead, what matters is "whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016); *Brown v. Chater*, 64 F.3d 669, 1995 WL 490275, at *2 (10th Cir. Aug. 16, 1995) ("The presence of a condition or ailment, without

11

accompanying evidence that the condition results in some functional limitation on the ability to do basic work activity, is insufficient to establish a disability."). Plaintiff points to no evidence to support greater work-related limitations than what the ALJ found, and it was her burden to put such evidence before the ALJ. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (Claimant "has the burden to provide evidence of claimant's functional limitations. . . . unless the ALJ's duty to further develop the record is triggered.").

### 1. Manual manipulative limitations.

Turning first to Plaintiff's argument regarding manual manipulative limitations, she argues that her dysarthria and weakness of the right hand prevented her from doing medium work. Doc. 20, at 4. Medium work requires "[u]se of the arms and hands is necessary to grasp, hold, and turn objects." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). This is "as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms." *Id.*

Plaintiff relies largely on her accounts of hand pain and poor grip to argue that she lacks the hand strength and coordination to perform the suggested jobs of kitchen helper, lab equipment cleaner, and warehouse worker. Doc. 20, at 5; *see* AR 22, 27.

Plaintiff's objective medical examinations and treatment notes support the ALJ's finding that she could perform medium work. Plaintiff received a

normal bilateral hand x-ray in April 2017, showing that "[t]he joint spaces throughout both hands and wrists [were] well maintained," as well as "[n]o acute osseous abnormality," no "bony erosions or subluxations, normal bone mineralizations" and "unremarkable" soft tissues. AR 692; *see id.* at 24 (noting Exhibit 3F). Plaintiff's treatment notes have also consistently shown a full range of motion in her joints and a lack of joint swelling. *E.g.*, *id.* at 596 (June 3, 2017), 634 (June 25, 2018), 781 (November 8, 2018); *see id.* at 24 (noting Exhibits 3F and 5F). Plaintiff's range of motion was even found to be normal at her January 4, 2018 reevaluation for inflammatory arthritis, where she complained she "had been dropping objects with her right hand." *Id.* at 23, 617.

Despite these complaints of hand swelling, Plaintiff later returned to work as a caretaker for disabled adults in October 2019—also a medium work position. *Id.* at 43 (Plaintiff's testimony), 51 (vocational expert's assessment of Plaintiff's work history). As well, none of her physicians recommended any restrictions on hand movements. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (ALJ's finding of not disabled was supported by substantial evidence where plaintiff's condition had "improved to the point of returning to work" and where "[n]o physician ha[d] opined that [plaintiff was] disabled. . . .").

Plaintiff also argues that the ALJ failed to account for Plaintiff's "arm and hand limitations attributable to her inflammatory arthritis and/or fibromyalgia" in his question to the vocational expert. Doc. 20, at 6. In fact, the

ALJ included these ailments in his hypothetical question to the vocational expert. After asking about an individual able to perform work at the medium exertion level, the ALJ asked the vocational expert a series of questions about a hypothetical individual's ability to perform sedentary work, with physical and mental limitations. AR 51, 53. The vocational expert opined that the hypothetical individual could perform one job, that of a document preparer. *Id.* at 53-54. The ALJ followed up to ask, specifically, if the witness's opinion would change "[i]f the individual . . . could only occasionally use the bilateral hands for gross and fine manipulation." *Id.* at  54. The vocational expert testified that such limitations on the use of the worker's hands, along with other hypothetical restrictions, would "eliminate" all jobs. *Id.* at 53-54. Plaintiff argues this response compelled the ALJ to assign greater arm and hand limitations. Doc. 20, at 6-7.

But the ALJ need not rely on the vocational expert's response to a hypothetical based on the ability to perform only sedentary work and limitations on hand usage if the ALJ determined the record did not support such limitations. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."). In addition to surveying Plaintiff's medical evidence which, as explained, shows primarily normal range of motion and

14

unremarkable x-rays, the ALJ noted that Plaintiff can count change, color, cook her own meals, perform household chores, play cards, and drive a car. AR 22, 25. The ALJ therefore did not err in declining to incorporate further manual manipulative restrictions into the RFC assessment.

### 2.   Standing and walking limitations.

Plaintiff's claim that the ALJ failed to properly account for her standing and walking limitations fails for similar reasons. Plaintiff argues that Plaintiff cannot sit or stand for six hours out of an eight-hour workday, as required by the ALJ's RFC assessment of medium work. Doc. 20, at 7; *see* SSR 83-10, 1983 WL 31251, at *6. Plaintiff points only to subjective and non-medical evidence that she had to sit and stand at will during her hearing before the ALJ and she "must lie down on average two to three hours a day." Doc. 20, at 7.

Plaintiff points to no objective medical evidence for support. Her lumbar, pelvis, and hip x-rays and MRI's have been unremarkable, revealing no issues except for bursitis in the right hip. AR, 23; *see, e.g., id.* 548-49 ("[u]nremarkable exam of the left hip joint" and "[u]nremarkable exam of the lumbar spine"), 693 ("Lumbar spinal alignment is within normal limits[; v]ertebral body heights and disc spaces appear well-maintained[; n]o osseous degenerative changes identified."), 712-13, 777 ("suspect trochanteric bursitis," but "normal" MRI of lumbar spine and "normal [x-ray] of right hip and right femur when pain started").

Plaintiff complained of increased back pain after moving out of her apartment, *Id.* at 24, 633, but even then she exhibited "normal range of motion, no bony tenderness, no swelling and no edema," *id.* at 768. And after spraining the ligaments in her lumbar spine while doing an hour-and-a-half long wheelchair hold, she saw improvement after three sessions of physical therapy. *Id.* at 24, 1169-70. Her pain was treated conservatively, with "Ibuprofen and Skelaxin." *Id.* at 24, 1172. After that injury, Plaintiff was placed on restricted work duty, meaning that she was limited to lifting fifteen pounds or less and was prohibited from twisting or bending. *Id.* at 24-25, 1170. However, those restrictions were only temporary and expired about a month later, on January 23, 2020. *Id.* at 25, 1170. Plaintiff suggests that these limitations might in fact have been permanent, as "it is unknown if the restrictions were ever lifted." Doc. 22, at 5. Plaintiff points to no evidence of permanent restrictions in the record. And as the ALJ noted, Plaintiff testified she can "sit/stand for 2 to 3 hours." AR 23. The Court therefore finds the ALJ properly considered Plaintiff's standing and walking limitations.

### 3. Obesity-related limitations.

Plaintiff claims the ALJ failed to address how her obesity exacerbates her standing and walking limitations. Doc. 20, at 7-8. Under Social Security Ruling 19-2p, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [he] reached [his] conclusion on

whether obesity causes any limitations." 2019 WL 2374244, at *4 (May 20, 2019). Yet "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairments." *Id.* at *2. An ALJ does "not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)," but instead "evaluate[s] each case based on the information in the case record." *Id.* at *4.

The ALJ found Plaintiff's obesity to be a severe impairment and considered "the limiting effects of [Plaintiff's] obesity" "in accordance with SSR 19-2p." AR 19-20. The ALJ concluded after "thoroughly [examining] the evidence of record, . . . that [Plaintiff's] obesity does not, either alone or in combination, meet or equal any listed impairment." *Id.* at 20. And the ALJ found persuasive a state agency physician's opinion which noted Plaintiff's BMI and the fact that she is obese. *Id.* at 25, 71; *see Archie D. F., Jr. v. Saul*, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) (finding no error in considering obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," stated the determination was "[b]ased upon 'a complete and thorough review of the evidence in the file,'" and the ALJ found a doctor's report persuasive "which noted Plaintiff's obesity and instances of elevated BMI in determining Plaintiff's functional abilities").

Plaintiff points out that SSR 19-2p provides that "someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and

functional limitations than the person would have due to the arthritis alone."
SSR 19-2p, 2019 WL 2374244, at *4; Doc. 20, at 8. True, but Plaintiff has not
directed the Court to any evidence that such a functional limitation actually
exists. *Razo v. Colvin*, 663 F. App'x 710, 716-17 (10th Cir. 2016) (noting the
plaintiff "does not discuss or cite to medical or other evidence to support his
claim that his obesity was disabling" and "conclud[ing] that the factual record
does not support Mr. Razo's claim that the ALJ failed to consider the effect of
his obesity"); *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (affirming
where the appellant "point[ed] to no medical evidence indicating that her
obesity resulted in functional limitations"). In fact, as the ALJ noted, the
medical evidence of record reflects a normal gait despite her obesity. AR 23,
591.

Plaintiff argues the ALJ "merely summarize[d]" the relevant evidence
and opinions, and then "announce[d] his decision." Doc. 20, at 8 (quoting *Brant
v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007)). But an ALJ is not
"required to note the absence of any evidence that [a claimant's] obesity
resulted in additional functional limitations or exacerbated any other
impairment." *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015).

Here, the ALJ considered as part of his RFC analysis that Plaintiff is
obese, with a BMI of 40.2. AR 23. The ALJ also considered Plaintiff's
physically-demanding activities of daily living that could be impacted by her

obesity such as doing household chores, as well as Plaintiff's own descriptions of her physical capabilities. *Id.* at 23, 25.

The Court finds substantial evidence supports the ALJ properly considered Plaintiff's obesity in arriving at the RFC.

### 4.   Pain-related limitations.

Plaintiff claims the ALJ failed to properly consider Plaintiff's pain in crafting the RFC assessment. Doc. 20, at 8. Under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), an ALJ evaluates complaints of disabling pain as follows:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64); *see* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

Plaintiff argues she was entitled to have her "nonmedical objective and subjective reports of symptoms evaluated and weighed fairly *alongside* the medical evidence." Doc. 20, at 9; *see Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988). That is exactly what the ALJ did here. The ALJ considered Plaintiff's subjective complaints of pain, noting, together with Plaintiff's specific complaints of back and joint pain and migraines, that she "is in constant pain and any form of exertion makes her physically sick" and that

"[h]er pain is more severe later in the day after being up and active." AR 22-23.

"[D]isability requires more than the mere inability to work without pain." *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986). The ALJ noted that Plaintiff is "severely stiff in the morning for several hours." AR 24. But as the ALJ noted, Plaintiff's pain is relieved by medication and physical therapy. *Id.* at 23-34, 588 ("Recently started on Tylenol #4 and this helps, but pain recurs once effects [wear] off."), 1172 (noting physical therapy helped Plaintiff's recovery after her wheelchair-hold injury). This improvement with treatment supports the ALJ's finding that Plaintiff's pain is not disabling. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 n.3 (10th Cir. 2009) (upholding finding of non-disabling pain where ALJ noted, among other things, "her pain and other symptoms; the factors that aggravate her symptoms; the type, dosage and effectiveness of her medications; [and] other measures that provide relief from her symptoms") (internal citations omitted). And as explained more thoroughly above, the ALJ considered objective medical evidence alongside Plaintiff's subjective complaints to support his finding of non-disabling pain. *Huston*, 838 F.2d at 1131. Substantial evidence supports the ALJ's pain assessment.

### 5. Mental health limitations.

Plaintiff claims that the ALJ did not "fully explore[ ]" her mental health issues, which compound her physical ailments. Doc. 20, at 3-4. Plaintiff argues

that the ALJ's RFC determination was inconsistent with his "B criteria" determination. *Id.* at 10.

Listing 12.04 (affective disorders), which the ALJ specifically considered, AR 20, consists of so-called "A" criteria, "B" criteria, and "C" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The A criteria document the presence of a particular mental disorder, while the B and C criteria describe functional limitations incompatible with the ability to do any gainful activity. *See id.* § 12.00(A) (introduction to the mental health listings).

"B criteria" findings do not necessarily equate to an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996); *see Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace . . . does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case."). "The mental RFC assessment . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings. . . ." SSR 96-8p, 1996 WL 374184, at *4.

The ALJ found Plaintiff's "B criteria" limitations as follows: Plaintiff is able to "understand, remember and carry out simple and some detailed, but not complex tasks," "relate to supervisors on a superficial . . . work basis," and "adapt to a work situation," but is limited to "a work environment where

21

contact with coworkers and the general public is incidental to work performed." AR 21.

Plaintiff argues the ALJ's finding that Plaintiff is capable of "some detailed, but not complex tasks," conflicts with the ALJ's findings of "mild restrictions in her ability to adapt or manage herself" and moderate limitations in "understanding, remembering, or applying information." *Id.* at 20-21; Doc. 20, at 10. But Plaintiff directs the Court to no objective evidence. To the contrary, the ALJ's "B criteria" findings and ultimate RFC assessment track the recommendations of the state agency psychiatrist whose report the ALJ found persuasive.[4] AR 20-21, 75,133-35.

The ALJ also supported his mental-health RFC findings with an analysis of Plaintiff's activities of daily living, noting that she "could perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, take medications, shop and drive." *Id.* at 20. Directly relevant to Plaintiff's capacity

---

[4]     Plaintiff argues the ALJ should have ordered a consultative examination because Plaintiff's 2018 mental-health screen indicates a moderate-to-severe score in the "feeling/mood/affect" category. Doc. 20, at 12-13. The state agency physicians whose opinions the ALJ found persuasive did not recommend a consultative examination. AR 113. As well, the record lacked any evidence "seriously challenging the ALJ's assessment of [Plaintiff's RFC] or the ALJ's conclusion regarding the severity of [Plaintiff's] mental impairment." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993). And the Court need not dwell on an argument that Plaintiff does not fully develop. *See Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those of her contentions that have been adequately briefed for our review.").

to interact with supervisors and the public, the ALJ also noted that she is "able to get along with others, shop, spend time with friends and family, and live with others." *Id.* at 21. And relevant to her ability to concentrate on a task, the ALJ noted that she "manage[s] funds" and "handle[s] her own medical care." *Id.* The medical record also shows that her coping mechanisms for stress improved with counseling. *Id.* at 24, 1009. Substantial evidence supports the RFC assessment's mental health limitations.

### B.   The ALJ properly assessed Plaintiff's consistency and subjective complaints.

Plaintiff argues the ALJ erred in her consistency/credibility finding. Doc. 20, at 13. The ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of [ ] her symptoms . . . are inconsistent. . . ." AR 26.

In assessing a claimant's consistency, the Court considers, among other factors, a claimant's "persistent attempts to find relief for [her] pain and [her] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems," as well as "daily activities, and the dosage, effectiveness, and side effects of medication." *Luna*, 834 F.3d at 165-66.

Plaintiff argues these factors "could not be properly considered in light of all the ALJ's [other] errors" and overwhelming evidence to the contrary.

Doc. 20, at 14. Plaintiff states that her symptoms are "consistent with the medical findings and the rest of the record" but does not point to any objective medical evidence that would undermine the ALJ's findings. *See id.*

The ALJ found Plaintiff's subjective statements to conflict with her activities of daily living because "she has reported that she is able to make her own meals, does household chores, plays cards, drives a car, shops in stores, goes out alone." AR 25. The ALJ also noted that while she had not reached substantial gainful activity since her onset date, Plaintiff had "engaged in work activities," indicating that her "daily activities have, at least at times, been somewhat greater than the claimant generally reported." *Id.*

Plaintiff characterizes the ALJ's analysis of Plaintiff's activities of daily living as the sole basis for his consistency finding. Doc. 20, at 14-15. But elsewhere the ALJ notes that Plaintiff's symptoms, both physical and mental, are controlled with medication. *See* AR 23 (noting Plaintiff's hand joint pain was helped by Tylenol #4), 24 (noting that Plaintiff reported "her depression was well controlled on Effexor and Gerd was well controlled on Prilosec"). The ALJ also notes Plaintiff does not use any assistive device for walking despite claims of disabling back pain. *Id.* at 23.

Substantial evidence supports the ALJ's consistency finding.

## V.   Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 7th day of October, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE